UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SF HOOKAH PALACE INC., et al.,<br><br>    Defendants. | Case No. 22-cv-07100-SVK<br><br>**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE**<br><br>**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 21 |

    On November 11, 2022, Plaintiff GS Holistic, LLC filed a complaint against Defendants SF Hookah Palace, Inc. and Izzat Asfour, alleging that Defendants infringed Plaintiff's trademarks. Dkt. 1. The Clerk of Court issued a summons on December 9, 2022. Dkt. 7. On February 9, 2023, Plaintiff filed a motion for extension of time to serve Defendants, which the Court granted. Dkt. 11. 12. Plaintiff subsequently filed proofs of service indicating that Defendant SF Hookah Palace was served on February 11, 2023, and Defendant Izzat Asfour was served on February 24, 2023. Dkt. 13-15.

    Neither of the Defendants filed a response to the Complaint by the applicable deadlines. On April 17, 2023, Plaintiff requested entry of default, and the Clerk of Court entered default against both Defendants on May 24, 2023. Dkt. 18, 10. After several months of inaction by Plaintiff, the Court set a deadline of October 10, 2023 for Plaintiff to file a motion for default judgment. Dkt. 20.

    On September 26, 2023, Plaintiff filed a motion for default judgment against both Defendants, which is now before the Court. Dkt. 21. Defendants have not appeared in this action or opposed the motion for default judgment, and briefing is now closed. *See* Civ. L.R. 7-3. This matter is suitable for determination without oral argument. Civ. L.R. Rule 7-1(b).

    Although Plaintiff has consented to the jurisdiction of a magistrate judge (Dkt. 8), neither of the Defendants has appeared or consented. Accordingly, the Court directs the Clerk of Court to **REASSIGN** this case to a District Judge, with the following **REPORT AND**

1  **RECOMMENDATION** that Plaintiff's renewed motion for default judgment be **GRANTED IN
2  PART**.

3  **I.    LEGAL STANDARD**

After entry of default, a court may, in its discretion, enter default judgment.  *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Before entering default judgment, the Court must assess the adequacy of the service of process on the party against whom default is requested.  *See Trustees of ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013).  The Court must also determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the defaulted defendant. *Id.* at *3-4.

If these requirements are met, "[t]he district court's decision whether to enter default judgment is a discretionary one." *Aldabe*, 616 F.2d at 1092.  In making its determination a court should consider: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)

**II.   DISCUSSION**

**A.    Service and Jurisdiction**

As discussed above, "[i]n deciding whether to grant or deny default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit*." Folkmanis, Inc. v. Uptown Toys LLC*, No. 18-cv-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sep. 13, 2018) (internal quotation marks and citation omitted).

Plaintiff's motion for default judgment states that Defendant Izzat Asfour was served by substitute service pursuant to Federal Rule of Civil Procedure ("FRCP") 4(e)(1) and California

1   Code of Civil Procedure ("CCP") § 415.20.  Dkt. 21 at 8.  The motion also states that Defendant
2   SF Hookah Palace was served by service on its registered agent, Mr. Asfour, pursuant to
3   FRCP  (h)(1)(A) and CCP § 415.20.
4         FRCP Rule 4(e)(1) permits service on an individual defendant by "following state law for
5   serving a summons in an action."  FRCP 4(h)(1)(A) is a similar provision allowing service of a
6   corporation pursuant to state law.  The Court therefore looks to California law in evaluating the
7   sufficiency of service in this case.
8         CCP § 415.20(a) states that "[i]n lieu of personal delivery of a copy of the summons and
9   complaint to the person to be served," a corporation may be served by "leaving a copy of the
10  summons and complaint during usual office hours in his or her office .... with the person who is
11  apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by
12  first-class mail, postage prepaid to the person to be served at the place where a copy of the
13  summons and complaint were left."
14        CCP § 415.20(b) allows substitute service on an individual defendant only "[i]f a copy of
15  the summons and complaint cannot with reasonable diligence be personally delivered to the
16  person to be served."  In that situation, a summons may be served by leaving a copy of the
17  summons and complaint at the person's usual place of abode or usual place of business in the
18  presence of a competent member of the household or a person apparently in charge of his or her
19  office and thereafter mailing a copy of the summons and complaint.
20        The proof of service filed by Plaintiff states that Mr. Asfour was served by substitute
21  service on an employee apparently in charge of Mr. Asfour's place of business and thereafter
22  mailed.  Dkt. 14.  The proof of service includes a declaration of reasonable diligence showing
23  three unsuccessful attempts to serve Mr. Asfour personally.  Dkt. 14 at PDF p. 4.  The proof of
24  service on SF Hookah Palace states that Mr. Asfour as registered agent for the corporation was
25  served by leaving copies of the summons and complaint with a person apparently in charge of the
26  usual place of business and thereafter mailing copies of the documents.  Dkt. 13, 15.
27        Based on this record, the Court concludes that service on both Defendants was proper.
28        The Court also concludes that it has subject matter jurisdiction over this case because it

3

includes under the federal Lanham Act.  *See* Dkt. 1.

### B.     *Eitel* Factors

Having concluded that the threshold requirements of service and jurisdiction are met, the Court next considers the *Eitel* factors and concludes that the majority of those factors weigh in favor of entering default judgment against Defendants.  The Court first considers whether Plaintiff's claims against Defendants are adequately pled and sufficient to find liability on the facts alleged, which must be taken as true (second and third factors).  Plaintiff seeks default judgment on "two claims:  trademark counterfeiting and infringement, and false designation of origin and unfair competition."  Dkt. 21 at 9.

The elements of a claim for trademark infringement are: (1) the plaintiff has a protectable ownership interest in a valid mark; and (2) the alleged infringer's use of the mark is likely to cause confusion, or to cause mistake, or to deceive consumers.  *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006); *see also* 15 U.S.C. § 1114(1).  "Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration [and] [w]hen proof of registration is uncontested, the ownership interest element of a trademark infringement claim is met."  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014).  Plaintiff meets the first element by alleging three registered marks.  Dkt. 1 ¶ 11.

"Likelihood of confusion exists when consumers viewing the mark would probably assume that the goods it represents are associated with the source of a different product identified by a similar mark."  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608 (9th Cir. 2005).  Likelihood of confusion "generally rel[ies] on an eight-factor test ...:  1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in selecting the mark; and 8) the likelihood of expansion into other markets."  *Id.*  But "[t]he factors should not be rigidly weighed; ... [they] are intended to guide the court in assessing the basic question of likelihood of confusion."  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1993).

Here, accepting the complaint's factual allegations as true, a reasonably prudent consumer would likely be confused as to the origin of the glass infuser sold by Defendants on October 5, 2022. *See* Dkt. 1 ¶ 30. The goods are closely related (*i.e.*, Plaintiff sells infusers), and Defendants' intent to confuse can be inferred from their pricing the infuser at a similar price point to Plaintiff's. Moreover, Plaintiff alleges that Defendants used a counterfeit mark (*see id.* ¶¶ 25 *et seq.*), and therefore "courts within the Ninth Circuit presume consumer confusion." *GS Holistic, LLC v. Natts Smoke II, Inc.*, No. CV 22-06840 PSG (AGR), 2023 WL 5017994, at *4 (C.D. Cal. July 12, 2023). However, the complaint plausibly alleges only one product offered for sale with only one infringing mark on it. *See* Dkt. 1 ¶ 30 (alleging that Plaintiff's investigator purchased a glass infuser with "a Stündenglass Mark affixed to it"); *id.* ¶ 31 (alleging that inspection of the purchased infuser had "an Infringing Mark affixed to it.") Accordingly, Plaintiff meets the confusion element, but as to only one of its three trademarks.

Plaintiff also asserts a claim for false designation of origin. Dkt. 1. The elements of that claim are: the defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015); *see* 15 U.S.C. § 1125(a); *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007). The elements of false designation of origin are similar to trademark infringement. *See Brookfield Commc'ns, Inc. v. W. Coast. Ent. Corp.*, 174 F.3d 1036, 1046 nn.6 & 8 (9th Cir. 1999); *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980). Therefore, courts have treated them as claims that rise and fall together. *GS Holistic, LLC. v. MSA-Bossy Inc.*, No. 22-cv-07638-JSC, 2021 WL 3604322, at *4 (N.D. Cal. May 22, 2023) (citing cases). Because Plaintiff's claim of trademark infringement is adequate for purposes of the second and third *Eitel* factors as to one trademark, its claim for false designation of origin is also adequate.

Turning to the other *Eitel* factors, the Court concludes that declining to enter default judgment against the defaulted Defendants would prejudice Plaintiff (first factor) because Plaintiff has no other recourse against Defendants. Plaintiff asks the Court to award the not-insubstantial

5

sum of $150,000.00 in statutory damages and $1,249.49 costs, as well as a permanent injunction. Dkt. 21-1.  Although entry of default judgment may not be appropriate where a large sum of money is at stake (fourth factor), here the damages sought are statutory and the amount is left to the Court's discretion.  There is no indication that Defendants' failure to respond is due to excusable neglect, nor is there any indication of a dispute concerning material facts (fifth and sixth factors).  Although public policy strongly favors decisions on the merits (seventh factor), in light of Defendants' refusal to litigate, it does not appear that litigation of the merits will be possible in this case.  Accordingly, the Court **RECOMMENDS GRANTING** Plaintiff's motion for entry of default judgment.

### III.  RELIEF TO BE AWARDED

In the motion for default judgment, Plaintiff seeks statutory damages, costs, a permanent injunction, and an order for the destruction of the infringing products.  Dkt. 21 at 13-18.  This is generally consistent with the relief sought in the complaint.  Dkt. 1 at Prayer for Relief.  Accordingly, Defendants are fairly on notice of their potential liability.  FRCP 54(c); *see also In re Ferrell*, 539 F.3d 1186, 1192-93 (9th Cir. 2008).

#### A.  Statutory Damages

The Court may award statutory damages between $1,000.00 and $200,000.00 for each trademark infringement involving use of a counterfeit mark, or up to $2,000,000.00 for willful violations, "as the court considers just."  15 U.S.C. § 1117(c).  The Court has discretion to award statutory damages between the minimum and maximum, so long as they are sufficient to deter future trademark infringement.  *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274–75 (9th Cir. 1982); *see also Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (explaining, in related context of copyright infringement, that "statutory damages further compensatory and punitive purposes").  "In determining the appropriate amount of statutory damages to award on default judgment, courts in this district have considered whether the amount of damages requested bears a plausible relationship to Plaintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (cleaned up).  "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it

is not entitled to a windfall." *Id*.

Plaintiff seeks $150,000.00 in statutory damages: $50,000.00 for each of three marks. Dkt. 21 at 16. But Plaintiff establishes only one sale, with one infringing mark, at the price of $652.49. *See* Dkt. No. 1 ¶ 30. Plaintiff's evidence of actual damages amounts to two paragraphs in its CEO's declaration:

> 15. In 2020, Plaintiff's total sales for its Stündenglass products were approximately $1,700,000.00 in the United States of America. In 2021, sales were approximately $9,600,000.00.
>
> 16. Through research, GS HOLISTIC, LLC has determined that at least 3 out of every 10 products sold is a counterfeit. Based on the industry knowledge of AFFIANT, if the market had not been impacted by the flood of inferior, mass-produced fake Stündenglass products, GS HOLISTIC, LLC's 2021 sales would have been approximately $38,400,000.00.

Dkt. No. 21-4 ¶¶ 15–16. These bare-bones conclusions do not meet Plaintiff's burden to demonstrate actual damages above $652.49. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Moreover, courts may consider deterrence, but must base a damages award on the particular defendant's violation. Here, Defendants should not be responsible for other trademark violations by other retailers across the market. Plaintiff's request is out of proportion to its actual damages, as another court in this District concluded in a similar case brought by Plaintiff. *See MSA-Bossy*, 2023 WL 3604322, at *5. Where a plaintiff cannot reasonably estimate actual damages, and especially where it shows only a few sales related to the counterfeit mark, courts are disinclined to award the maximum statutory damages at the risk of a windfall. *See id.* (collecting cases).

Under the circumstances of this case, an award of $5,000.00 is just. *See* 15 U.S.C. § 1117(c); *see also GS Holistic, LLC v. Awalom*, No. 23-cv-00748-TSH, 2023 WL 7458853, at *7 (N.D. Cal. Oct. 6, 2023); *MSA-Bossy Inc.*, 2021 WL 3604322, at *6. This award is above the statutory minimum, represents more than seven times the price of the only sale at issue, and serves a deterrent purpose while avoiding a windfall. Accordingly, the Court **RECOMMENDS** an award of $5,000.00 in statutory damages.

7

### B. Costs

The Court "shall," "subject to the principles of equity," award "the costs of the action" to a plaintiff who establishes a trademark violation. 15 U.S.C. § 1117(a). Plaintiff seeks $1,249.49 in costs, comprised of the filing fee ($402.00), process server fee ($130.00), and "investigation fees" ($717.49). Dkt. 21 at 16-17.

Filing and service of process expenses are reasonable and routinely awarded. *See, e.g., Facebook, Inc. v. Sahinturk*, No. 20-CV-08153-JSC, 2022 WL 2239841, at *2 (N.D. Cal. June 17, 2022); *3M Co. v. G7 Env't, LLC*, No. CV 20-8892 PA-AFMX, 2021 WL 2935659, at *10 (C.D. Cal. June 9, 2021). However, Plaintiff does not cite any authority for shifting the cost of presuit investigation to Defendants. The plain language "the costs of the action," 15 U.S.C. § 1117(a), is limited to costs incurred after "the action"—the court case—has begun. *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized [from oral interpretation to document translation]."); *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (applying *Taniguchi*); *MSA-Bossy*, 2023 WL 3604322, at *6.

Accordingly, the Court **RECOMMENDS** an award of costs in the amount of $532.00.

### C. Permanent Injunction

The Court may order permanent injunctive relief "to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."). A plaintiff is entitled to a rebuttable presumption of irreparable harm upon a finding of trademark infringement. 15 U.S.C. § 1116(a).

Plaintiff's Complaint seeks and its proposed judgment includes a permanent injunction

(Dkt. No. 1 at 13–14; Dkt. No. 21-1) but the motion for default judgment does not specifically address the elements that must be satisfied before injunctive relief is warranted. *See* Dkt. 21 at 17. Instead, Plaintiff simply directs the Court to review "the reasons explained in Plaintiff's complaint." *Id.* As such, Plaintiff has not met its burden for obtaining a permanent injunction. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756–57, 759–61 (9th Cir. 2018). Moreover, the proposed permanent injunction seeks injunctive relief beyond that sought in the Complaint insofar as would extend to "[a]ssisting, aiding or attempting to assist or aid any other person or entity in performing" any of the activities prohibited by the injunction. *Compare* Dkt. 1 at 13-14 *with* Dkt. 21-1 at 2. In addition, the proposed permanent injunction would apply to all three Stündenglass Marks (*see* Dkt. 21-1 at 1-2) even though, as discussed in Section II.B. above, Plaintiff has only established infringement of one of the marks.

Accordingly, the Court **RECOMMENDS** that Plaintiff's request for a permanent injunction be denied.

IV. **CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that judgment be entered in favor of Plaintiff and against Defendants. The Court further **RECOMMENDS** that Plaintiff be awarded a total of $5,000.00 in statutory damages and $532.00 in costs.

Any party may file objections to this report and recommendation with the District Judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3. Failure to file an objection may waive the right to review of the issue in the district court.

**SO ORDERED.**

Dated: December 19, 2023

SUSAN VAN KEULEN
United States Magistrate Judge